**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ULYSSE LOUISMA, individually and on behalf of all others similarly situated,** ) ) ) | **11 CV 2104** |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **AUTOMATED FINANCIAL, LLC & METABANK, d/b/a META PAYMENT SYSTEMS,** ) ) ) ) | |
| ) | **October 27, 2011** |
| **Defendants.** ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Ulysse Louisma has moved pursuant to Federal Rule of Civil Procedure 26(c) for a protective order allowing him to delay disclosing certain surveillance photographs until after representatives from defendants Automated Financial and Metabank are deposed. For the following reasons, the motion is denied.

**Background**

Louisma brings this class action suit under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and its implementing Regulation E, 12 C.F.R § 205.1 *et seq.*, alleging that the defendants—who operate automated teller machines—failed to post a required fee notice on or near an ATM at the Old Orchard Mall in Skokie, Illinois ("the Skokie ATM"). (R. 1, Compl. ¶¶ 6, 9, 11, 15.) When Louisma used the Skokie ATM on June 27, 2010, he was charged a $3.50 withdrawal fee. (Id. ¶ 10.) According to Louisma's complaint, there was no fee notice on or near the Skokie ATM at the time of his transaction.

(Id. ¶ 11.) Louisma seeks actual and statutory damages for the proposed class in accordance with EFTA and Regulation E. (Id. ¶ 31.) In June 2011, the assigned district judge referred this case to this court for discovery supervision. (R. 13.) On October 7, 2011, Louisma filed the current motion requesting a protective order for certain surveillance photographs depicting the relevant ATMs. (R. 35.)

**Analysis**

In moving for a protective order, Louisma argues that he should be allowed to delay disclosing multiple photographs taken of two ATM machines relevant to this case, including the Skokie ATM, in order to prevent the defendants' witnesses from modifying their deposition testimony to conform to the images depicted in those photographs. Louisma concedes that the photographs arguably are responsive to Metabank's request for document production, but he objects to turning them over until after he has deposed the defendants' representatives. Louisma argues that good cause supports the motion because, according to him, the delayed production will ensure that the witnesses testify from their unrefreshed recollection rather than tailoring their testimony to reflect what is revealed in the photographs.

In keeping with the "liberality of pretrial discovery," this court has the authority to issue protective orders permitted by Federal Rule of Civil Procedure 26. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Pursuant to Rule 26(c), the court may exercise its discretion to issue a protective order when the moving party shows "good cause" to protect the material. *See* Fed. R. Civ. P. 26(c)(1); *Citizens First Nat. Bank of Princeton v. Cincinnati*

2

*Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The burden of showing good cause rests on the moving party. *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010). To establish good cause, courts have emphasized the moving party's burden to provide specific supporting facts, rather than mere allegations or conclusory assertions. *See, e.g., Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998); *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 436, 438 (N.D. Cal. 2008); *Jerolimo v. Physicians for Women, P.C.,* 238 F.R.D. 354, 356 (D. Conn. 2006).

Louisma argues that he has shown good cause for the protective order because, according to him, withholding the photographs until after the depositions of the defendants' representatives will prevent those witnesses from tailoring their testimony to reflect the conditions shown in the photographs. But his concern that the photographs will cause the defendants' witnesses to testify untruthfully is nothing more than a "[b]road allegation[] of harm [which], unsubstantiated by specific examples or articulated reasoning, [does] not satisfy the Rule 26(c) test." *Fausto*, 251 F.R.D. at 437 (internal quotation omitted). That is because the court will not assume that a witness will testify untruthfully absent some specific demonstration of fact pointing to that risk. *See Rofail v. United States*, 227 F.R.D. 53, 59 (E.D.N.Y. 2005); *see also Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 24 (E.D.N.Y. 2006); *Jerolimo*, 238 F.R.D. at 356.

In an attempt to lift his argument above the realm of speculation and into that of specific facts, Louisma points to what he characterizes as instances in which Metabank revised previous testimony, provided inconsistent affidavits, and submitted documents with

3

unexplained handwritten modifications. But there is no support for his assertions that these examples represent any intent on Metabank's part to mislead Louisma or to falsify the record in this case. For example, Louisma alleges that after Metabank produced the affidavit of a witness stating that the relevant ATMs display their original fee notices, his counsel told the defendants' counsel that based on the surveillance photos, the ATMs did not display their *original* fee notices. (R. 46, Reply at 3-4.) According to Louisma, after that conversation the defendants submitted a new affidavit from a different witness, an ATM technician, clarifying that he had replaced the original fee notice with a new fee notice after the first one began to peel at the corner. (Id. at 4.) But Louisma has not shown that there is anything particularly material about the cited inconsistency that would support an inference that the defendants' witnesses are willing to falsify their testimony to create a misleading version of the relevant events. Because he has not shown that there is anything particularly suspicious about the prior inconsistencies, he has not rebutted the presumption that the witnesses will testify truthfully. *See Fausto*, 251 F.R.D. at 438 (finding that there is no reason to presume a party will fabricate their testimony to conform with recorded material). Because it is questionable that the cited inconsistencies represent misleading conduct on the part of the defendants, and because the harm the disclosure of the photographs *may* cause Louisma is not clearly defined, on balance this court concludes that he has not established "good cause" to justify the proposed protective order. *See Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (noting that "the court must balance the interests involved" in conducting the good cause analysis).

Perhaps even more importantly, the cases on which Louisma relies to support his proposal to withhold relevant discovery are all related to the evidentiary exception that pertains to a witness's own prior statement. *See Poppo v. Aon Risk Servs., Inc.*, 00 Civ. 4165(HB), 2000 WL 1800746, at *1 (S.D.N.Y. Dec. 6, 2000) (collecting cases). That exception stems from Federal Rule of Evidence 613(a), which explicitly states that a witness's own prior statement "need not be shown nor its contents disclosed to the witness" at the time of his testimony. As the defendants point out, that exception says nothing about documents, photographs, or any of the other materials that are typically subject to discovery, and thus is not applicable here.

Nor does this court agree with Louisma that he should be allowed to delay production of the photographs because he intends to use them primarily for impeachment purposes. Because the photographs' content is directly relevant to the subject matter of the case—whether the fee notice was attached to the ATM—they carry a high degree of independent substantive value. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (considering the strength of the material's substantive value in determining whether material should be disclosed). Where the substantive value of the challenged material outweighs its impeachment value, the production should not be delayed until after depositions. *See Jerolimo*, 238 F.R.D. at 357 (disclosure compelled in part because of the likelihood that the tape recording would be used as substantive evidence). That is because fairness concerns weigh against the kind of sandbagging involved when the moving party sets up grounds for impeachment by using undisclosed materials in an attempt

5

to manufacture inconsistencies. *See Costa*, 237 F.R.D. at 25. Given the substantive value of the withheld photographs, this court concludes that fairness concerns militate against the proposed protective order.

Lastly Louisma argues—but only in his reply—that the surveillance photographs are not subject to production because they constitute attorney work product under Rule 26(b)(3)(A). (R. 46, Reply at 1-2.) Louisma has waived this argument by raising it for the first time in his reply.[1] *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). But even if Louisma had properly raised the argument and this court accepted the assumption that the photographs are classifiable as work product, disclosure would still be warranted because Metabank has both a substantial need for, and an inability to gain, the equivalent material. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Sandra T.E. v. S. Berwyn School Dist. 100,* 600 F.3d 612, 622 (7th Cir. 2009). Because the photographs depict the ATM and its surroundings at specific moments in time, there is no way for Metabank to replicate the photographs or to obtain the information they depict from another source. Therefore, regardless of whether the photographs are work product, Metabank would still be entitled to discover them. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hummer v. BNSF Ry. Co.*, 06 CV 1218, 2006 WL 3523752, at *2 (C.D. Ill. Dec. 6, 2006) (compelling disclosure of surveillance tapes

---

[1] Not only does Louisma raise new arguments in his reply, he also attached new exhibits he could have supplied with his motion on September 8, 2011. This practice of raising arguments and offering exhibits for the first time in a reply brief must be avoided so as to provide the non-moving party a fair opportunity to file a comprehensive response.

despite work-product objection). For these reasons, the court declines to grant the requested protective order on the grounds of Louisma's late-raised work-product argument.

## Conclusion

With open discovery as the norm, limiting protective orders to situations in which the moving party establishes good cause preserves the efficiency of the overall discovery process. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958). Because Louisma has not established the requisite good cause here, his motion for a protective order is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**