IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSE LOUISMA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-CV-2104 |
| AUTOMATED FINANCIAL, LLC and METABANK, d/b/a META PAYMENT SYSTEMS, a division of METABANK, | ) ) ) ) ) | Judge Coleman Magistrate Judge Kim |
| Defendants. | ) ) | |
| KAREN COLE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | Case No. 11-CV-3299 |
| v. | ) ) | reassigned as related to 11-CV-2104 |
| AUTOMATED FINANCIAL, LLC and METABANK, d/b/a META PAYMENT SYSTEMS, a division of METABANK, | ) ) ) ) | |
| Defendants. | ) | |

**JOINT MOTION FOR PRELIMINARY
APPROVAL OF A CLASS ACTION SETTLEMENT**

Plaintiffs Ulysse Louisma and Karen Cole and Defendants Automated Financial, LLC and Metabank hereby move this Court for an order: (1) certifying the proposed Settlement Class for settlement purposes only; (2) preliminarily approving all terms and conditions of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement"); (3) directing Notice to the Class Members; and (4) setting dates for submitting claims, exclusions ("Opt-Outs"), objections and a Final Approval Hearing. In support of this motion, the parties state as follows:

1. Counsel for Plaintiffs and Defendants have reviewed and analyzed the legal and factual issues presented in this case and the risks and expenses likely associated with litigating this case to conclusion.

2. With the assistance of Magistrate Judge Kim and numerous arms-length settlement negotiations, the parties and their respective counsel negotiated and executed a comprehensive Settlement Agreement (<u>Exhibit 1</u> hereto), which proposes to settle these related cases on a class-wide basis.

3. The parties have stipulated to certification of the following Settlement Classes for settlement purposes only:

<blockquote>
<u>Class A</u>: All persons who, from March 28, 2010 through March 1, 2011, were charged a transaction fee for the use of ATM No. 819364000001, located at 4999 Old Orchard Center in Skokie, Illinois.

<u>Class B</u>: All persons who, from May 17, 2010 through February 1, 2011 were charged a transaction fee for the use of ATM No. 819363720001, located at Water Tower Place, 845 N. Michigan Avenue in Chicago, Illinois.
</blockquote>

4. Pursuant to the Settlement Agreement, and based upon the amount of ATM surcharge fees collected during the Settlement Class period, the parties have agreed, *inter alia*, that Defendants will establish a Settlement Fund of $53,000.00. The Settlement Fund shall be disbursed as follows, pursuant to Section 2.2 of the Settlement Agreement:

<blockquote>
(a) <u>Payment to Class Representatives</u>. The Class Representatives shall receive $1,500.00 each for their individual claims and as an incentive award for their services as Class Representatives.

(b) <u>Payment of Notice/Administration Costs</u>. Costs of Class Notice and Administration, except cost of Posted Notice (which shall be separately borne by Defendants), in an amount not to exceed $10,000.00, shall be paid from the Settlement Fund at the time such expenses are incurred.

(c) <u>Class Recovery</u>. The amount remaining in the Settlement Fund after deducting the amounts set forth in paragraphs (a) and (b) above shall be
</blockquote>

2

      divided *pro rata* among Participating Claimants; provided, however, that no Class Member shall receive payment from the Settlement Fund in an amount to exceed $1,000.00.

    (d) <u>Cy Pres</u>. Monies remaining in the Settlement Fund, if any, after payments are made pursuant to paragraphs (a)-(c) above, shall be paid as a *cy pres* award to the Chicago Bar Foundation.

  5. Additionally, the Defendants have agreed to pay Class Counsel $57,000.00 in reasonable attorneys' fees and costs.

  6. The parties have agreed on the forms of Class Notice to be given to Class Members, pursuant to Section 2.4 of the Settlement Agreement: publication notice once in the Chicago Sun-Times and once in the Skokie Pioneer Press (<u>Exhibit B</u> to the Settlement Agreement), posted notice on the ATMs at Issue (<u>Exhibit C</u> to the Settlement Agreement), and website notice (<u>Exhibit D</u> to the Settlement Agreement). This proposed notice plan has been previously approved as fair and reasonable by numerous courts in this district, including but not limited to the following: *Flores v. Diamond Bank*, No. 07 C 6403 [DE 101]; *Boecherer v. Burling Bank*, No. 08 C 1332 [DE 128]; *Ochart v. Broadway Bank*, No. 08 C 4893 [DE 44]; *Escalante v. Lincoln Park Savings Bank*, No. 08 C 6152 [DE 25]; *Siragusa v. North Community Bank*, No. 09 C 2687 [DE 35].

  7. The parties submit that the proposed forms of Class Notice meet the requirements of Rule 23. Rule 23(c)(2)(B) states, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The parties submit that newspaper publication notice (covering the areas in which the ATMs are located), posted notice, and website notice, as set forth in Section 2.4 of the Settlement Agreement, is the best Class Notice practicable under the circumstances. The parties' proposed forms of Class

Notice are reasonable given that: (a) publication notice is being specifically targeted to the paper circulated in the ATMs' vicinity; (b) a detailed notice which includes the full Settlement Agreement, the complaint and other court documents is being published on the Internet; and (c) notice is also being posted on the very ATMs that are the subject of this litigation.

8. Rule 23(e)(1) requires that, in class settlements, notice be given "in a reasonable manner to all class members who would be bound by the proposal." The parties agree that direct mail notice is untenable in this case, because: (a) it is cost-prohibitive; and (b) it would require issuing subpoenas (and likely seeking compulsion orders) in many jurisdictions around the country to obtain the identity of class members from potentially hundreds of financial institutions that issued credit/debit cards to class members. Here, logs were maintained for the ATM transactions at issue in this case but they do not identify the class members' names, addresses or provide any other contact information. Testimony obtained from banking personnel in other EFTA class actions has confirmed that typical ATM transaction logs identify the class members' ATM card transactions by a PAN, or "primary account number." Certain digits of the PAN correspond to the particular financial institution issuing the bank card while other digits of the PAN uniquely identify the class member. The digits corresponding to the financial institutions are called a BIN or "bank identification number." *See*, *e.g*., Affidavits of Eduardo Monteagudo, attached as Exhibit 2 hereto. With the PAN, while it is theoretically possible to locate many of the class members, it is under the circumstances of this particular case impracticable. One method would be to obtain the name of the financial institution which corresponds to the bank identification number contained in the PAN.[1] Assuming the financial institution corresponding

---

[1] In the case of *Burns v. First American Bank*, Eduardo Monteagudo, Vice President of First American Bank swore under oath that no single comprehensive source of bank identification numbers exists in the financial institutions industry. *See* Affidavits of Eduardo Monteagudo, attached as Exhibit 2.

4

to the BIN could be located, Plaintiffs would still need to issue subpoenas to each of the dozens of corresponding banks. Plaintiffs would then have to request from each of these banks the account holder information (name, address and other contact information) corresponding to the PAN numbers derived for the more than 20,000 transactions. From this point, Plaintiffs could create a database of the class members' addresses. From the database, notice could then be sent to the addresses via first class mail. Thus, while theoretically possible, under the circumstances, the above-described method is not the best practicable means of sending notice given that this laborious process is not guaranteed to produce successful results.

9. Therefore, the parties submit that newspaper publication notice (covering the areas in which the ATMs are located), posted notice, and website notice is the best notice practicable under the circumstances. Individual notice by mail is required where the class member's address is known or is available through reasonable effort. *See*, *e.g.*, *In Re General Electric Capital Corp.*, MDL 1192, No. 97 CV 3065, No. 97 CV 9005, 2000 U.S. Dist. LEXIS 4808, *16-17 (N.D. Ill. March 9, 2000). It is respectfully submitted that, due to the third parties that would be required to even identify the banks who issued the ATM cards used, such a process exceeds the reasonable effort required under the Rule. In other words, the notice plan proposed here constitutes the "best notice practicable under the circumstances" of this case. Fed. R. Civ. P. 23(c)(1)(B).

10. In addition to the agreed upon forms of notice, the parties have also agreed on a form of a proposed Preliminary Approval Order (Exhibit E to the Settlement Agreement) and a proposed Final Approval Order (Exhibit F to the Settlement Agreement).

WHEREFORE, for the foregoing reasons, the parties request that this Court enter an order: (1) certifying the proposed Settlement Classes for settlement purposes only; (2)

preliminarily approving all terms and conditions of the proposed Class Action Settlement Agreement and Release; (3) directing Class Notice to the Class Members; and (4) setting dates for submitting claims, exclusions, objections and a Final Approval Hearing.

                Respectfully submitted,

                By: /s/ Stacy M. Bardo
                One of Plaintiffs' Attorneys
                The Consumer Advocacy Center, P.C.
                180 W. Washington St., Suite 700
                Chicago, IL 60602

                By: /s/ Stuart M. Nagel
                One of Defendant Automated Financial's Attorneys
                Chalmers & Nagel, PC
                100 W. Kinzie, Suite 250
                Chicago, IL 60654

                By: /s/ Daniel P. Shapiro
                One of Defendant Metabank's Attorneys
                Katten Muchin Rosenman LLP
                525 W. Monroe St.
                Chicago, IL 60661